**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF IDAHO**

| | |
|---|---|
| **In Re:**<br><br>**Marlin Brandt Pohlman,**<br><br>                    **Debtor.** | **Bankruptcy Case No. 16-01332-JMM** |

**MEMORANDUM OF DECISION**

*Introduction*

On July, 21, 2017, chapter 7[1] debtor Marlin B. Pohlman ("Debtor") filed an objection to the Chapter 7 Trustee's Notice of Final Report and Application for Compensation.  Dkt. No. 42.  In it, Debtor made a number of arguments regarding the State of Oregon's ("the State") claim in his bankruptcy case.  On August 23, 2017, the State responded.  Dkt. No. 46.  On September 8, 2017, the Court conducted a status conference concerning the objection, at which the State

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all Rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037, and all Civil Rule references are to the Federal Rules of Civil Procedure, Rules 1–86.

1 **|** MEMORANDUM OF DECISION

agreed to have Debtor's objection treated as an objection to the allowance of the State's claim. Dkt. No. 48. Following the hearing the Court entered an order providing that Debtor's objection "shall be treated for all purposes as an objection to allowance of the claim filed in this case by [the State], Proof of Claim No. 1."[2] Dkt. No. 49 at 2. The order further provided that Debtor and the State were to submit any additional information or arguments they desired the Court to consider by January 8, 2018. The parties have since done so. Dkt. No. 54; *State of Oregon v. Pohlman*, 17-06001-JMM ("AP"),[3] Dkt Nos. 39, 40, 41.

The Court has considered the evidence, the arguments put forth, as well as the applicable law, and this Memorandum sets forth the Court's findings, conclusions, and reasons for its disposition of the objection. Rules 7052; 9014.

*Facts*

On September 17, 2014, Debtor, then incarcerated in the state of Oregon, commenced a civil action in the United States District Court for the District of Oregon against a number of employees of the State of Oregon's Department of Corrections ("the Civil Case"). Compl., *Pohlman v. DiGuilio*, 3:14-cv-01483-PK (D. Or. Sept. 17, 2014), Dkt. No. 2.[4] Debtor sought damages for alleged constitutional violations that were related to an injury he suffered during his

---

[2] The state consented to such treatment. Dkt. No. 46 at 2.
[3] Debtor's documents were mistakenly filed in this related adversary proceeding by court staff after the documents were received by mail. The Court will consider them as if filed in the bankruptcy case for purposes of disposing of the objection.
[4] The Court takes judicial notice of the docket of *Pohlman v. DiGuilio*, 3:14-cv-01483-PK (D. Or. Sept. 17, 2014) and the documents and content filed therein. Federal Rule of Evidence 201(b) (2), (c); *Lee v. City of L.A.*, 250 F.3d 668, 690 (9th Cir. 2001) (quoting *Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426–27 (3rd Cir. 1999)); *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (taking judicial notice of a state court judgment and related filings).

2 | MEMORANDUM OF DECISION

transfer between correctional facilities and the medical care and accommodations he did or did not receive thereafter. *Id.*

In the next month, October 2014, a Misconduct Report was submitted by A. Clements, a nurse manager employed by the Oregon Department of Corrections. Misconduct Report at 45, AP Dkt. No. 40. It charged Debtor with "Extortion I" and "False Information to Staff." *Id.* The description of the violation provides:

> [Debtor] presented to Central Medical around 9:40 on October 24, 2014. He stated he had taken 12 packages (7800 mg) of Tylenol and 12 packages (4800 mg) of Ibuprofen in the past 24 hours. Poison Control was contacted and based on the amount of medication [Debtor] had taken, they advised he be sent to the local Emergency Room (ER). He was taken to SAMCO, ER via state vehicle. Lab tests at the ER were low, less than 10mcg/ml of Tylenol in his blood. This is not consistent with the amount of Tylenol [Debtor] admitted to taking. This false information to staff resulted in a costly medical trip, charges undetermined at this time. [Debtor] should be charged with the cost of this medical trip that resulted from false information to medical staff.

*Id.* Debtor was given a written "Notice of Hearing/Inmate Rights" and a hearing ("the Administrative Hearing") was conducted by hearing officer Joe Capps ("Capps"). Notice at 46, AP Dkt. No. 40. The unofficial copy of the findings of fact, conclusions, and order from the hearing provides findings of fact that were consistent with the allegations in the misconduct report. Compare Proof of Claim ("POC") No. 1 at 6 with Misconduct Report at 45, Dkt. No. 40. Based on those facts, Debtor was found to have made a major rule violation of Property I, for which he lost privileges for ten days and was required to pay the cost of the medical trip as restitution. POC No. 1 at 7-9.

Debtor requested administrative review of the hearing order. Review Request at 47, AP Dkt. No. 40. Superintendent Mark Nooth ("Nooth"), in a letter dated November 24, 2014, wrote that after reviewing the case and information provided by Debtor, he decided the hearing was

3 | MEMORANDUM OF DECISION

conducted in full compliance with "the Department of Corrections Rule Governing Inmate Prohibited Conduct and Procedures for Processing Disciplinary Actions." Nooth Letter at 48, AP Dkt. No. 40. Moreover, Nooth decided that the Administrative Hearing was impartially handled and the sanctions imposed were appropriate given the violations. *Id.* Thus, he found no basis to change or modify the sanctions. *Id.*

Because the amount of Debtor's medical costs were unavailable during the earlier hearings, the Administrative Hearing was reconvened on January 20, 2015. Addendum at 49, AP Dkt. No. 40. At that time, Debtor was ordered to pay restitution for the cost of the hospital visit in the amount of $2,757.12. *Id.* This amount is consistent with the invoice regarding Debtor's trip to the hospital. AP Dkt. No. 36 at 12, 14 (providing a net obligation of $1,262.12 to the hospital and a net obligation of $1,495 to the physician).

Meanwhile, on January 26, 2015, in the Civil Case in the District of Oregon, Debtor sought leave to amend his complaint to include a claim regarding what he perceived to be constitutional violations during the administrative hearings conducted by Capps, among other things. *Pohlman*, 3:14-cv-01483-PK, Dkt No. 32. On August 18, 2015, the Oregon District Court granted Debtor leave to file an amended complaint. *Id.* at Dkt. No. 74. On September 25, 2015, Debtor filed a Second Amended and Supplemental Complaint. *Id.* at Dkt No. 87 ("Or. Am. Compl.").[5]

In the amended complaint, Debtor added Capps, Nooth, and the State as defendants. Or. Am. Compl. at 4. And Debtor included the following factual allegations:

---

[5] Debtor filed another amended complaint on February 4, 2016, but no changes were material to the issues at hand. *Pohlman*, 3:14-cv-01483-PK, Dkt No. 116.

4 | MEMORANDUM OF DECISION

27. 11/13/2014  I was charged with a Rule 1.05.03 Property I violation Case# 1410 SRCI 0154 SRCI 17 for misusing Tylenol in treatment of persistent nerve pain.  I was informed by staff that 12 units of Tylenol in a 24 hour period was misuse that endangered the facility.  I had no access to prescription pain relievers and have gone untreated for persistent nerve pain since April 15, 2014 despite repeated attempts to utilize the sick call process and request treatment.  No written directions, direct orders or guidelines for self serve medication exist on our unit or in the inmate handbook.  Hearing Officer Joe Capps denied my request for assistance in preparing a defense.  Denied me access to the functional unit manager and denied my request to call Officer Mark Curry [as] a witness in my own defense who had agreed to testify that I had discussed my dosages with him prior to taking the Tylenol and who had stated I could take up to 30 units for storage in my cell every 24 hours.  I assert that this constituted DOC employee authorization, an affirmative defense to the charge of Rule 1.05.03 Property I and that I was illegally denied my right to present an effective defense in accordance with OAR 291-105-0005.  As a result of disciplinary sanctions I have been fined a restitution amount of $2757.12, denied access to phone services to place legal calls with my attorney which jeopardized my appeal and post conviction efforts due to pending deadlines.

28. 11/15/2014  Plaintiff requested relief under [Oregon Revised Statute ("ORS")] 291-105-0100 Vacating or Withdrawing the Final Order in the Interest of Justice Statute via CD 1442 which states The Inspector General, Assistant Director for Operations or the Institutions Administrator may, in the interest of justice, vacate all or part of a final disciplinary order or withdraw the order and direct that a disciplinary hearing be reopened for consideration of new evidence.  Under Statutory Authority: ORS 179.040, 421.068, 421.180, 423.020, 423.030 & 423.075.

Or, Am. Compl. at 10-11.  And "When Plaintiff was assessed a restitution amount of $2,757.12 plaintiff used the administrative review process to attempt to address the issue and was denied by S.R.C.I. supervisor Mark Nooth." *Id.* at 12.  Based on these additional allegations, Debtor added Claim 5 to his amended complaint in the Civil Case, described therein as:

Intentional Tort - Negligence Per Se in violation of 1st Amendment, 8th Amendment, 14th Amendment, HIPAA Pub. L. 104-191, 110 Stat. 1936, 18 USC 1512(d)(2), of 42 USC 1983, 42 USCS 12131 et. Seq., 42 USC 200(d), 29 USC 794(a), 42 USC 1983, ORS 179.040, 421.068, 421.180, 423.020, 423.030 & 423.075. 42 U.S.C. 1985, 42 U.S.C. 1986, 42 U.S.C 1320 et seq. 42 U.S.C. 1985(2), 28 U.S.C. 1346, 42 U.S.C 12131 et. seq. and 29 U.S.C. 794, 42 U.S.C. § 12101 Retaliation, Denial of Due Process, Intentional Infliction of Emotional Distress, Cruel and Unusual Punishment,

5 | MEMORANDUM OF DECISION

Deliberate Indifference to Medical Needs -Richardson, Landaverde, Clements, Capps, Nooth

Rights Violated: United States Constitution 1st Amendment, United States Constitution 8th Amendment, United States Constitution 14th Amendment, Right to Due Process, HIP AA Pub. L. 104-191, 110 Stat. 1936, 18 USC 1512(d)(2), of 42 use 1983, 42 uses 12131 et. Seq., 42 use 2oo(d), 29 use 794(a), 42 use 1983, ORS 179.040, 421.068, 421.180, 423.020, 423.030 & 423.075. 42 U.S.C. 1985, 42 U.S.C. 1986, 42 U.S.C 1320 et seq. 42 U.S.C. 1985(2), 28 U.S.C. 1346, 42 U.S.C 12131 et. seq. and 29 U.S.C. 794, 42 U.S.C. § 12101

*Id.* at 15.  The following facts, among others, were provided as "supporting facts" within

Claim 5:

11/13/2014 Plaintiff was then charged with a Rule 1.05.03 Property I violation Case# 1410 SRCI 0154 SRCI 17 for misusing Tylenol in treatment of persistent nerve pain. Plaintiff was informed by medical staff that the attorney generals [sic] request for medical records involved with his case were creating a unnecessary burden on the facility. Plaintiff was informed by Landaverde, Clements and Richardson that 12 units of Tylenol in a 24 hour period was misuse that endangered the facility. Plaintiff was denied access to prescription pain relievers and had gone untreated for persistent nerve pain since April 15, 2014 despite repeated attempts to utilize the sick call process and request treatment.  No written directions, direct orders or guidelines for self serve medication exist on plaintiffs unit or in the inmate handbook[.]  No warnings were given to plaintiff[.]  No progressive discipline was proposed.  Hearing Officer Joe Capps denied plaintiff request for assistance in preparing a defense. Hearing Officer Joe Capps denied plaintiff due process and access to the functional unit manager. Hearing Officer Joe Capps denied plaintiff request to call Officer Mark Curry [as] a witness in his own defense who had agreed to testify that he had discussed plaintiffs dosages with Plaintiff prior to taking the Tylenol and who had stated Plaintiff could take up to 30 units for storage in my cell every 24 hours. Plaintiff asserted that this constituted DOC employee authorization, an absolute defense to the charge of Rule 1.05.03 Property.  Plaintiff was illegally denied his right to present an effective defense in accordance with OAR 291-105-0005.  As a result of disciplinary sanctions Plaintiff was denied access to phone services to place legal calls with my attorney who has jeopardized his appeal and post conviction efforts and ordered to pay restitution in the amount of 2757.12.  11/15/2014 Plaintiff requested relief under ORS 291-105-0100 Vacating or Withdrawing the Final Order in the Interest of Justice Statute via CD 1442 which states The Inspector General, Assistant Director for Operations or the Institutions Administrator may, in the interest of justice, vacate all or part of a final disciplinary order or withdraw the order and direct

6 | MEMORANDUM OF DECISION

    that a disciplinary hearing be reopened for consideration of new evidence. Mark Nooth SRCI supervisor denied this request. Plaintiff asserts that Landaverde, Clements and Richardson misused protected health information in a retaliatory manner to file said rule violation. Plaintiff asserts HIPAA provides more stringent standards to protect plaintiff and, therefore, preempts state law and 42 USC 1983 due to dates of passage of said statute. State actor Nooth, Capps, Landaverde, Clements and Richardson took adverse action against plaintiff an inmate because that prisoner's protected conduct, and that such action chilled the inmate's exercise of his First Amendment rights, and the action did not reasonably advance a legitimate correctional goal.

*Id.* at 18—19. Regarding claim 5, Debtor prayed for the following relief:

    12. Injunctive relief regarding future retaliation
    13. The Amount of $2757.12 for Restitution Charged.
    . . .
    15. Punitive damages as this court deems just, proper and equitable.

*Id.* at 23.

    On August 4, 2016, the Civil Case was conditionally dismissed with prejudice pending a settlement by the parties. *Pohlman*, 3:14-cv-01483-PK, Dkt. No. 149. On September 20, 2016, the State and other defendants filed a Notice of Settlement, which included a Settlement Agreement and Release of Claims ("the Settlement Agreement") that was signed by Debtor and "the Released Parties," which included the State. *Id.* at Dkt. No. 151; *see also* Dkt No. 46 at 6-14. The Settlement Agreement provides that in exchange for a $5,000 settlement payment from the State, Debtor agreed to release, acquit, and forever discharge the "Released Parties", including the State, "from any and all claims, demands, or causes of action, whether known or unknown, under any legal, equitable, or other theory, that exist or may exist, against the Released Parties through the Effective Date of this Agreement," which was August 3, 2016. *Id.* at 8. The release, acquittal, and discharge included "any damages . . . and equitable relief (including injunctions and declaratory judgments), whether known or unknown, or which may develop after

7 | MEMORANDUM OF DECISION

the effective date of this Agreement, and including any and all expenses (attorney fees, costs, and disbursements)." *Id.* at 8-9.  While the Settlement Agreement contained the above described releases of the State by the Debtor, notably there is no release by the State of any claims it has against the Debtor.  Moreover, the Settlement Agreement stated that it "is not to be construed as an admission or proof of any liability or fault whatsoever on the part of the parties." *Id.* at 10.

On October 13, 2016, Debtor filed a chapter 7 petition.  Dkt. No. 1.  The State filed a proof of claim based on the $2,757.12 that Debtor was ordered to pay as restitution for his hospital visit.  POC No. 1 at 2.  On June 27, 2017, the chapter 7 trustee in Debtor's case filed his Final Report, proposing to pay the State's claim in full.  Dkt. No. 37 at 6.  Debtor objected.  Dkt. No. 42.  The only asset available for distribution was $4,100 that remained from the State's payment to Debtor to settle the Civil Case in the District of Oregon.  Dkt. No. 37 at 3.  On July, 21, 2017, Debtor filed the objection that is now pending before the Court as an objection to the State's claim.  Dkt. Nos. 42, 49.

*Analysis*

Under the Code, a "claim" is defined, in relevant part, as a "right to payment." §101(5)(a).  A proof of claim, filed under § 501, and in accordance with Rule 3001, is deemed allowed, and constitutes prima facie evidence of the validity and amount of the claim.  § 502(a); Rule 3001(f).  "However, if a party in interest objects to a claim, the Court must determine whether the claim is allowed, and if so, the amount of the claim as of the date of the filing of the petition." *In re Deer Valley Trucking, Inc.*, 569 B.R. 341, 347 (Bankr. D. Idaho 2017) (citing § 502(b); *In re Davis*, 554 B.R. 918, 921 (Bankr. D. Idaho 2016)).  The Court must allow the claim "except to the extent that— (1) such claim is unenforceable against the debtor and the

8 **|** MEMORANDUM OF DECISION

property of the debtor . . . for a reason other than because such claim is contingent or unmatured . . . ." § 502(b)(1).

Debtor argues the State's claim is unenforceable for a number of reasons:

1. The restitution order was satisfied or released as part of the settlement of Debtor's civil case in the District of Oregon.

2. The restitution order is invalid because the hearing officer erred in finding Debtor liable.

3. The restitution order is invalid because certain decisions of the hearing officer, the procedure of the administrative hearing, and/or the restitution award itself violated Debtor's constitutional rights or other rights provided by federal law

4. The restitution order violated ORS 179.640 because it failed to consider Debtor's ability to pay when it was calculated.

5. Distributing the funds in the estate, which are proceeds from the settlement with the State, to pay the State's claim, which is to satisfy the restitution order for Debtor's trip to the hospital, would violate ORS 179.620 and ORS 179.640.[6]

Debtor's Obj. at 1-2, Dkt. No. 42.

The State argues the settlement agreement did not relieve Debtor of his obligation under the restitution order. Rather, the State argues the settlement order prevents Debtor from making any arguments regarding the validity of the restitution order because through it, Debtor released all such claims. State's Resp. at 3, Dkt. No. 46. As for Debtor's argument regarding ORS 179.620, the State merely argues it is inapplicable to its claim. State's Resp. at 4, Dkt. No. 46.

**A.    The Settlement of the Civil Case Did Not Eliminate the State's Claim**

---

[6] Debtor also argues that § 523(a)(7) does not apply to the restitution order. Dkt. No. 42 at 1. But § 523(a)(7) only concerns whether the debt is nonndischargeable, which is not presently before the Court. Thus, the Court declines to address this argument.

9 | MEMORANDUM OF DECISION

The Administrative Hearing was conducted in late 2014 and concluded in January 2015. Thereafter, Debtor amended his complaint in the Civil Case to include factual allegations and claims against the State for issues regarding the Administrative Hearing and the restitution order. In August 2016, Debtor and the State settled the Civil Case. Through that settlement agreement, Debtor released the State, "from any and all claims, demands, or causes of action, whether known or unknown, under any legal, equitable, or other theory, that exist[ed] or may [have existed], against the Released Parties through" August 3, 2016. This release included Debtor's claims concerning the validity and constitutionality of the Administrative Hearing and the restitution order because the events that gave rise to them, as well as the Administrative Hearing and entry of the restitution order, all occurred prior to August 2016. More specifically, Debtor released his right to argue that the restitution order is invalid because the hearing officer erred in finding Debtor liable; that the procedure of the administrative hearing and/or the restitution award itself violated Debtor's constitutional rights or other rights provided by federal law; and that the restitution order violated ORS 179.640. In addition, the dismissal of the amended complaint in the Civil Case with prejudice precludes relitigation of the issues in this case, *i.e.* whether the restitution order is valid. *See Stewart v. U.S. Bancorp*, 297 F.3d 953, 956 (9th Cir. 2002) (holding claim preclusion bars relitigation of claim raised in a prior action, when there is an identity of claims, a dismissal with prejudice, and an identity or privity between parties). Thus, these arguments fail to show that the State's claim should be disallowed.

Importantly, the State did not release Debtor from his obligation under the restitution order in the settlement agreement. The State only agreed to pay Debtor $5,000 in exchange for his release of claims against the State. Because of this, the settlement of the Civil Case did not

10 **|** MEMORANDUM OF DECISION

satisfy Debtor's liability to the State under the restitution order, the State's claim is still enforceable against Debtor, and the State's claim must be allowed. Therefore, the Debtor's first four reasons why the claim should be disallowed, as enumerated by the Court in this decision, are overruled.

**B.      ORS 179.620 Does Not Provide a Basis to Disallow the State's Claim**

Debtor's fifth reason to disallow the State's claim is made under ORS 179.620. That statute is not applicable. Oregon Revised Statute 179.620(5) provides that "the Department of Corrections, the Department of Human Services and the Oregon Health Authority may not collect the cost of care from:

> (a) Any assets received by or owing to a person and the personal estate of the person, or the decedent's estate, as compensation from the state for injury, death or, if the collection is being made by the Department of Corrections, the false imprisonment of the person that occurred when the person was in a state institution listed in ORS 179.321 in the Eastern Oregon Training Center and for which the state admits liability or is found liable through adjudication . . . .

As can be seen, this statute addresses from what sources the State may look to for repayment of a claim for the cost of care of an inmate. It says nothing concerning the enforceability of the State's restitution order against Debtor. As such, Debtor's final argument fails and the State's claim will be allowed in the bankruptcy case.

**C.      The State's Allowed Claim May Be Paid From the Settlement Funds**

The Debtor's argument using ORS 179.620(5), however, potentially raises an issue with the trustee's proposal to distribute the settlement funds in the estate to the State if those funds were received by Debtor as compensation for his injury.[7] But an argument against distribution

---

[7] Given the nature of most of Debtor's arguments, the Court previously decided it would consider the Debtor's objection to trustee's distribution as an objection to the State's claim. However, upon

11 | MEMORANDUM OF DECISION

under this statute fails as well.  First, the Settlement Agreement does not provide that the $5,000 was being paid as "compensation from the State for injury."  Further, the Settlement Agreement states that it is not an admission of liability by the State.  And finally, ORS 179.620(5) does not apply to the State's restitution order.

ORS 179.620 is part of the statutory scheme that covers the "Responsibility of Cost of Care of Persons in State Institutions" within the chapter covering Administration of State Institutions."  *See* ORS 179.610 though ORS 179.770.  Generally, persons in Oregon state institutions are liable for their full cost of care.  ORS 179.620(1).   However, their liability is subject to a number of limitations.  *Shinault v. Hawks*, 782 F.3d 1053, 1056 (9th Cir. 2015) (citing ORS 179.620; 179.640).  For example, under ORS 179.640, the Department of Corrections is required to establish rules for determining the person's ability to pay.  And, as previously noted, the Department of Corrections may not collect the cost of care from any assets received by a person as compensation from the state of Oregon for injury.  ORS 179.620(5).  Under the authority of these statutes, rules were put in place to establish guidelines for determination of a person's ability to pay, notification to the inmate of his or her obligation to

---

further scrutiny it has become apparent that this argument does purport to object to the trustee's distribution on allowed claims.  Given that the original objection was to the trustee's distribution, and this argument was a part thereof, the Court sees no prejudice to the parties by considering this argument as it was originally raised: as an objection to distribution as originally pled.  Thus, in the interest of making reasonable allowances for pro se litigants and construing their pleadings liberally, the Court will still consider this argument as an objection to the trustee's distribution, despite its prior order. *Reynard v. Karass (In re Saito Bros Inc.)*, 560 B.R. 540, 545 (Bankr. D. Idaho 2016) ("The Court makes "reasonable allowances" for pro se litigants and construes their pleadings and papers liberally."); *Wilshire Courtyard v Cal. Franchise Tax Bd. (In re Wilshire Courtyard)*, 729 F.3d 1279, 1289 (9th Cir. 2013) ("[I]t is well recognized that a bankruptcy court has the power to interpret and enforce its own orders.") (quoting *Travelers Indemnity Company v. Bailey*, 557 U.S. 137, 151 (2009)).

12 **|** MEMORANDUM OF DECISION

pay for the cost of care, and appeal rights and process. *See* Or. Admin. Code 291-203-0010 through 291-203-0100.

However, although Debtor's obligation to the State is derived from the cost of his hospital visit, Debtor's liability is neither for the "cost of care" described in these statutes, nor was it established through the process described in these rules. Rather, Debtor's liability arises from his major rule violation of the Rules of Misconduct's rule 1.05, Property I. *See* OAR 291-105-0015(1)(b). In contrast to the statutes covering the "Responsibility of Cost of Care of Persons in State Institutions" for the "Administration of State Institutions", Debtor's liability arises under the statutes covering "Inmate Discipline." *See* ORS 421.180 through ORS 421.194. Indeed, ORS 421.180 provides that the Department of Corrections "by rule shall adopt procedures to be utilized in disciplining persons committed to the physical and legal custody of the department." Under the authority of ORS 421.180 and others, the Department of Corrections promulgated the Rules of Misconduct, including Property I, and rules for the procedures for disciplinary actions of inmates, like Debtor's. Or. Admin. Code 291-105-0005 through 291-105-0100. Under Oregon Administrative Code 291-105-0069, a hearing officer may enter an additional sanction of restitution for a major rule violation. It provides that:

> "[i]nmates shall be responsible for making full restitution for any damage or loss of property. In addition, inmates shall be financially responsible for all costs associated with or resulting from the violation. . . . . There is no limit on the amount of restitution or reimbursement which can be imposed for a major sanction."

13 **|** MEMORANDUM OF DECISION

Or. Admin. Code 291-105-0005.[8] Such restitution was ordered in Debtor's case for his major rule violation of Property I. That restitution order is the basis of the State's claim.

As far as the Court can tell, and Debtor has offered no legal authority to the contrary, the restrictions that ORS 179.620 places on the collection of "the cost of care", does not apply to restitution orders entered as inmate discipline for major violations of the Rules of Misconduct. After all, the State does not assert Debtor is liable simply because he received medical care; Debtor is liable because it was found that the cost of his hospital visit was incurred as a result of his misconduct. Because of this, ORS 179.620 is inapplicable to prevent the State from collecting from the settlement funds to satisfy the restitution order outside of bankruptcy. If it is not applicable outside of bankruptcy, then it cannot bar the bankruptcy trustee from paying the State's claim from the proceeds of the bankruptcy estate unless there is a code provision to the contrary. To be sure, §726, which provides how property of the estate shall be distributed, contains no prohibition of the trustee making distributions to allowed such as the one held by the State. Debtor's objection to the Trustee's proposed distribution, therefore, is also denied.

### *Conclusion*

For the foregoing reasons, the State's claim will be allowed in the amount of $2,757.12. Moreover, Trustee may distribute the funds in the estate that Debtor received as part of the

---

[8] Moreover, restitution is defined as a "monetary amount ordered in accordance with the Department of Corrections rule on Prohibited Inmate Conduct and Processing Disciplinary Actions. Restitution funds will be credited to the institution or program suffering fiduciary loss or cost from the inmate misconduct, and shall be the actual cost incurred." Or. Admin. Code 291-105-0010(36).

14 | MEMORANDUM OF DECISION

settlement of the Civil Case to pay on the State's allowed claim.  A separate order will be entered.

      This decision does not resolve, however, the State's claims, or the Debtor's remaining counterclaims, in the adversary proceeding, *State of Oregon v. Pohlman*, 17-06001-JMM ("AP"). While the State indicated it intends to dismiss the claims it brought in the adversary proceeding, the Debtor's counterclaims are yet unresolved.  The Court, by separate order, will schedule a pretrial conference at which the procedure for the further disposition of the remaining issues in the adversary proceeding will be addressed.



DATED:  May 14, 2018

_____
JOSEPH M. MEIER
U. S. BANKRUPTCY JUDGE

15 | MEMORANDUM OF DECISION