# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

| | |
|---|---|
| In Re:<br><br>**Marlin Brandt Pohlman,**<br><br>                      **Debtor.** | Bankruptcy Case<br>No. 16-01332-JMM |

## MEMORANDUM OF DECISION

### Introduction

On May 7, 2018, chapter 7[1] debtor Marlin B. Pohlman ("Debtor") filed a Motion for Sanctions in Contempt of the Automatic Stay and a Motion for Injunctive Relief regarding a letter he received from the Department of Corrections for the State of Oregon ("the State"). Dkt. Nos. 58, 59. On May 29, 2018, the State responded to Debtor's motions and filed a notice of hearing. Dkt. Nos. 65, 66.

On June 8, 2018, the Court conducted a hearing where the parties presented oral argument on the motions and agreed to provide the Court with further briefing regarding the extent of possible damages resulting from Debtor's receipt of the letter from the State.

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all Rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037, and all Civil Rule references are to the Federal Rules of Civil Procedure, Rules 1–86.

MEMORANDUM OF DECISION − 1

Dkt. No. 69. On June 29, 2018, presumably in response to the Court's request for information on damages, Debtor filed his "Motion for Judgment on the Pleadings RE: Fair Debt Collection Act," and a request for the admission of an exhibit containing information on damages. Dkt. Nos. 71, 72. On July 19, 2018, the State responded to Debtor's filings on the issue of damages. Dkt. No. 73. The Court has considered the evidence and arguments of the parties, and this Memorandum Decision sets forth the Court's findings, conclusions, and reasons for its disposition of the motion. Rules 7052; 9014.

*Facts*

On October 13, 2016, Debtor filed a bankruptcy petition. Dkt. No. 2. On January 20, 2017, the State commenced an adversary proceeding against Debtor to determine the dischargeability of its claim of $2,757.12,[2] which was based on a restitution order entered against Debtor in an administrative disciplinary hearing resulting from a hospital visit of the Debtor's while incarcerated with the State. Dkt. No. 25; *State of Oregon v. Pohlman*, 17-06001-JMM. On February 3, 2017, an order was entered granting Debtor a discharge. Dkt. No. 32. On May 14, 2018, this Court allowed the State's claim over Debtor's objection. Dkt. No. 61. On that same day, the Chapter 7 trustee paid the State's claim of $2,757.12 in full. Dkt. No. 70 at 7. Because the State's claim was paid in full, and

---

[2] On May 5, 2017, the State filed a proof of claim in the amount of $2,757.12 based on the restitution order. Proof of Claim No. 1-1.

MEMORANDUM OF DECISION − 2

pursuant to the agreement of the parties at hearing, the Court dismissed the adversary proceeding on June 14, 2018. Dkt. No. 54.

After the entry of discharge, but before the dismissal of the adversary proceeding, the State sent Debtor the following letter, dated April 24, 2018 ("the Letter"):

> Attached is a statement showing the amount you owe the Department of Corrections ($2,732.46) as of April 24, 2018. The full amount of the unpaid charges listed on the statement is due and payable.
>
> …
>
> If payment is not received in a timely manner, your account will be considered for referral to a collection agency.

Dkt. No. 59 at 3. The attachment shows the following "debt and obligation" related to Debtor's restitution order:

| Type | Payable | Info Number | Amount Owing | Amount Paid |
|---|---|---|---|---|
| MDISA | Medical Disciplinary Advance | 02202015 | 2732.46 | 24.66 |

*Id.* at 4. Upon receipt of the Letter, Debtor filed the Motion for Sanctions in Contempt of the Automatic Stay requesting civil contempt sanctions of $1,000 against the State. Dkt. No. 58 at 1. Debtor also filed a Motion for Injunctive Relief, seeking an injunction of the State's collection efforts on the above debt. Dkt. No. 59.

The State responded to Debtor's motion, arguing that it did not violate the automatic stay or the discharge injunction. Dkt. No. 65. The parties presented their arguments on the motions at a hearing on June 8, 2018, and Debtor was given until

MEMORANDUM OF DECISION − 3

July 6, 2018, to submit affidavits on the issue of damages. Dkt. No. 69. The State was given until July 20, 2018, to respond. *Id.*

Debtor claims damages under the Fair Debt Collection Practices Act ("FDCPA"), damages for his emotional distress, and damages on behalf of the class of persons similarly aggrieved by the allegedly wrongful debt collection practices of the State. Dkt. No. 71. In support of his claims, Debtor asks the Court to admit into evidence Exhibit 3, which consists of medical records and a ledger from Lifeworks Northwest. Dkt. No. 72. The State responded to Debtor's filings on the issue of damages, detailing its position on the inapplicability of the FDCPA, the inadmissibility of Exhibit 3 due to a lack of foundation and relevance, and its efforts to settle the matter with the Debtor. Dkt. No. 73.

*Analysis and Disposition*

Debtor argues that the State should be sanctioned and that he is entitled to damages, and injunctive relief from the State's collection efforts, because the Letter was a willful violation of the automatic stay and a willful violation of the discharge injunction.

A.   **The Automatic Stay Terminated When the Discharge Was Entered**

"The § 362(a) automatic stay, which arises when a petition is filed, prevents collection of prebankruptcy debts during the bankruptcy case, but it terminates upon entry of a discharge in favor of the debtor." *In re Larsen*, 580 B.R. 901, 908–09 (Bankruptcy D. Idaho 2017) (citing § 362(c)(2)(C)).

MEMORANDUM OF DECISION − 4

Here, the automatic stay in Debtor's case terminated when the discharge order was entered on February 3, 2017. Because of this, the State could not have violated the automatic stay when it sent the Letter on April 24, 2018. Debtor's argument that the State violated the automatic stay is not well-taken, and no sanctions or injunctive relief will be ordered on these grounds.

**B.    The State Violated the Discharge Injunction When It Sent the Letter**

  *1. Applicable Law*

In a chapter 7 case, absent certain exceptions not relevant here, bankruptcy courts "shall grant the debtor a discharge[.]" § 727(a). Among other things, the discharge acts as an "injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover, or offset any [debt discharged under § 727] as a personal liability of the debtor[.]" §524 (a)(2). "As provided in § 727(b), the scope of the discharge in bankruptcy extends to 'all debts that arose before the date of the order for relief under this chapter . . .' except those excepted from discharge in § 523(a)." *Larsen*, 580 B.R. at 909 (citing *In re Dickerson*, 510 B.R. 289, 296 (Bankr. D. Idaho 2014)). Debts "of a kind specified in paragraph (2), (4), or (6) of [§ 523(a)]" shall be discharged "unless, on request of the creditor to whom such debt is owed, and after notice and a hearing, the court determines such debt to be excepted from discharge[.]" § 523(c)(1).

One issue that arises under these provisions is the operation of the discharge injunction in cases where a creditor has filed a § 523 nondischargeability complaint.

MEMORANDUM OF DECISION − 5

Under what circumstances, and to what extent, does the filing of a dischargeability complaint operate to disable the strict prohibitions of the discharge injunction as to a disputed debt?  Courts have ruled that the discharge injunction does not apply to certain creditor actions where a creditor (1) obtained stay relief, prior to the entry of the debtor's discharge, to proceed with actions that would normally be prohibited by the discharge injunction, and (2) filed a § 523 dischargeability complaint related to the same action/s for which stay relief was granted.

For example, in a case where a plaintiff requested relief from the automatic stay to proceed with probate actions in state court, and filed a timely dischargeability complaint under § 523, the 9th Circuit's Bankruptcy Appellate Panel ("BAP") held that continuation of state court actions after the court's entry of discharge did not violate the discharge injunction.  *In re Kvassay*, No. CC-15-1420, 2016 WL 5845672, at *6–8 (9th Cir. BAP Oct. 6, 2016).[3]  Citing the approval of numerous decisions from other jurisdictions, the BAP explained that "upon the timely filing of a complaint objecting to dischargeability of a debt under § 523, the discharge injunction does not apply with respect to that debt until the bankruptcy court makes a determination as to the dischargeability of that debt." *Id.* at *7.  However, this broad statement of the law must necessarily be cabined by the factual context within which it was made.  Specifically, the

---

[3] The BAP noted that its decision "was not appropriate for publication," but "may be cited for whatever persuasive value it may have."  *In re Kvassay*, 2016 WL5845672, at *1 n.1 (9th Cir. BAP 2016).

MEMORANDUM OF DECISION − 6

BAP explained "that an action in state court that was properly brought, that was properly continued after seeking and receiving relief from the automatic stay" does not violate the discharge injunction. *Id.* at 6. Thus, the plaintiff's right to proceed in state court continued throughout the pendency of the dischargeability complaint because the plaintiff had been granted stay relief to proceed with the state court action.

Similarly, in another case decided by the BAP, a plaintiff moved to reopen a debtor's case to file a dischargeability complaint under § 523. *Lakhany v. Khan (In re Lakhany)*, 538 B.R. 555, 558 (9th Cir. BAP 2015). After reopening, the plaintiff requested and received relief from the automatic stay to add the debtor as a defendant in a state court case related to the dischargeability complaint. *Id.* at 559. The BAP held that the stay relief order operated "as a declaratory judgment that the discharge injunction of § 524 [did] not enjoin" the plaintiff from proceeding in the state court action. *Id.* at 563.

Courts in other jurisdictions have taken the same approach and have even gone so far as to offer a three-part test for determining when pursuit of state court actions may proceed without violating the discharge injunction. In *Buke v. Eastburg (In re Eastburg)* 440 B.R. 624 (10th Cir. BAP 2010), the Bankruptcy Appellate Panel of the 10th Circuit affirmed the decision of a bankruptcy court where a plaintiff had moved for stay relief to proceed with a state action and filed a dischargeability complaint in bankruptcy court related to the same state action. The bankruptcy court had ruled that continuance of the state court action did not violate the discharge injunction, explaining that:

> [t]he scope of claims against a debtor that a plaintiff may pursue once the discharge is entered depends on whether the following requirements are

MEMORANDUM OF DECISION − 7

> met: 1) the cause of action to establish the debt and a claim of non-dischargeability are based on the same conduct, transactions and occurrences; 2) the non-dischargeable character of the debt is at issue in the adversary proceeding; and 3) the creditor is prosecuting the cause of action in state court for the purpose of applying collateral estoppel to avoid relitigating the validity and extent of the debt in the adversary proceeding.

*Buke v. Eastburg (In re Buke)*, 440 B.R. 851, 858 (Bankr. D.N.M. 2010).

The above cases demonstrate that the filing of a § 523 nondischargeability complaint, by itself, does not automatically disable the applicability of the discharge injunction as to all activities prohibited by § 524(a)(2). In each case, the courts found the discharge injunction did not apply because the plaintiff was granted stay relief to proceed in state court.

   *2. Analysis*

Here, Debtor argues that the State violated the discharge injunction when it sent the Letter on April 24, 2018, after the entry of discharge. Dkt. No. 58. Debtor claims that the Letter was an improper attempt to collect a debt that was discharged by this Court's order of February 3, 2017. *Id.*

In response, citing the BAP's decision in *Kvassay*, the State claims it could not have violated the discharge injunction because it sent the Letter while a § 523 dischargeability action was pending before this Court. Dkt. No. 65. The State tries to graft the logic of *Kvassay* onto the facts of this case, arguing that "[t]he reasoning of the *Kvassay* court applies here [and] that the discharge injunction of § 524 does not operate to prohibit the State's communication with the Debtor regarding the debt." *Id.* at 5.

MEMORANDUM OF DECISION − 8

However, the circumstances of this case differ substantially from those in *Kvassay*. Here, the State did not request stay relief, or seek other permission from the Court, to proceed against Debtor with actions prohibited by the discharge injunction, be it a state court proceeding, a collection effort, or anything else. While it is true the State sent the Letter while the debt mentioned in the Letter was the subject of a pending § 523 dischargeability proceeding, this does not give the State free reign to initiate collection actions absent approval from this Court. Further, the Letter bore no purpose related to the determination of nondischargeability in the adversary proceeding.

In the absence of permission from the Court, the filing of a dischargeability complaint does not automatically disable the discharge injunction, granting creditors permission to proceed unabated with collection efforts in violation of the discharge injunction. To rule otherwise would eviscerate the fundamental policy purposes of the discharge injunction and the Bankruptcy Code writ large: a fresh start. *See In re Venegas*, 257 B.R. 41, 44 (Bankr. D. Idaho 2001) ("The purpose of the discharge order is to prevent creditors from attempting to collect debts so the debtor may enjoy a fresh financial start."). Since the State sent the Letter without proper permission from the Court, and the Letter was an improper collection effort in violation of § 524(a)(2), the Court hereby finds that the State violated the discharge injunction when it sent the Letter to Debtor.

//

//

MEMORANDUM OF DECISION − 9

C.   **The State's Violation of the Discharge Injunction is Sanctionable**

1. *Applicable Law*

Section 105(a) grants bankruptcy courts the power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." A party who knowingly violates the discharge injunction can be held in contempt and sanctioned under § 105(a). *Taggart v. Lorenzen (In re Taggart)*, 888 F.3d 438, 443 (9th Cir. 2018). Debtor, as the moving party has the burden of showing by clear and convincing evidence that the State "violated a specific and definite order of the court." *Id.*

The Ninth Circuit has "adopted a two-part test for determining the propriety of a contempt sanction in the context of a discharge injunction [violation]: '[T]o justify sanctions, the movant must prove that the creditor (1) knew the discharge injunction was applicable and (2) intended the actions which violated the injunction.'" *Id.* (quoting *Renwick v. Bennett (In re Bennett)*, 298 F.3d 1059, 1069 (9th Cir. 2002)). "[I]n applying this standard, the focus 'is not on the subjective beliefs or intent of the [creditor] in complying with the order, but whether in fact [its] conduct complied with the order at issue." *In re Dickerson*, 510 B.R. 289, 297–98 (Bankr. D. Idaho 2014) (quoting *Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1191 (9th Cir. 2003)). A creditor need not have "any specific intent to violate the injunction, as simply engaging in a volitional act that does in fact violate the injunction is sufficient to trigger sanctions." *In re Mooney*, 532 B.R. 313, 327 (Bankr. D. Idaho 2015) (citing *In re Urwin*, No. 07-01104, 2010 WL

MEMORANDUM OF DECISION − 10

148645, at *4 (Bankr. D. Idaho Jan. 14, 2010)). "Upon [a showing of the above elements], the burden then shifts to the creditor to demonstrate why it was not able to comply with the discharge order." *Dickerson*, 510 B.R. at 298 (citing *Bennett*, 298 F.3d at 1069).

Because the State violated the discharge injunction, the Court must consider whether sanctions for contempt are appropriate under the Ninth Circuit's two-part test. First, was the State aware of the applicability of the discharge injunction? The record reflects that this Court sent the State a copy of the Order of Discharge on February 5, 2017. Dkt. No. 35. As such, the State is charged with notice of the applicability of the discharge injunction to its claim.

Second, did the State intend the actions that violated the discharge injunction? The State alleges it sent the Letter because of an inadvertent classification in its computer system. Dkt. No. 65 at 2. Nonetheless, the State committed the volitional acts of printing, posting, and mailing the Letter to Debtor. Debtor need not go further and demonstrate that the State had the specific intent to send the Letter. The State is responsible for the actions of its computer systems, even where a specific action caused by such systems has results the State may not have intended. *See, e.g.*, *Dickerson*, 510 B.R. at 298 (holding that a creditor's issuance of an improper writ as an "oversight" did not excuse its violation of the discharge injunction in issuing the writ); *see also In re Browne*, 358 B.R. 139 (Bankr. D. N.J. 2006) (explaining that a state Department of Motor Vehicles' discharge violation was not excused by a computer system error). The

MEMORANDUM OF DECISION − 11

State was aware of the discharge injunction and its applicability to its claim, and the State intended to send the Letter to the Debtor. Therefore, the State is subject to contempt sanctions for its violation of the discharge injunction.

      2. *Form of Debtor's Submissions Regarding Damages*

At the June 8, 2018, hearing on these motions, the Court asked the parties to submit additional affidavits regarding damages Debtor may have suffered as a result of receiving the Letter from the State. Dkt. No. 69. In response, Debtor submitted his "Motion for Judgment on the Pleadings RE: Fair Debt Collection Act," Dkt. No 71, and a request for the admission of an exhibit ("Exhibit 3") containing information that might bear on the issue of damages. Dkt. No. 72. The Court assumes these submissions are Debtor's response to the Court's request for affidavits on damages and will consider the legal significance of their contents accordingly.

      3. *The Admissibility of Exhibit 3 is Immaterial to the Resolution of the Motions*

Prerequisite to ruling on the issue of damages in this case, the Court must address Debtor's request to admit Exhibit 3. Dkt. No. 72. Exhibit 3 and its attachments consist of letters from Allison Howells and Kelly Richardson (employees of "Lifeworks Northwest," who presumably have treated the Debtor) and three pages of a hard-to-read "client ledger" that appear to be a log of Debtor's treatments through Lifeworks Northwest. The State objects to admission of Exhibit 3, alleging that it lacks proper foundation for admission into evidence, and alternatively, that its contents are not relevant to determining whether the Letter caused Debtor to suffer any damages. Today,

MEMORANDUM OF DECISION − 12

this Court does not rule on this issue because the admissibility of Exhibit 3 is moot. As discussed below, even if the Court were to admit Exhibit 3 in its entirety and accept its contents as true, Debtor has failed to show that he has suffered damages that are compensable under existing law.

    4. *Debtor Failed to Prove Compensatory Damages*

If the moving party establishes a knowing, willful violation of the discharge injunction, "a bankruptcy court may award the debtor the actual damages suffered as a result of that conduct . . . ." *Dickerson*, 510 B.R. at 298 (citing *In re Nash*, 464 B.R. 874, 880 (9th Cir. BAP 2012)). "[T]he language of § 105(a) authorizes only those remedies 'necessary' to enforce the bankruptcy code[:] sanctions associated with civil contempt— that is, compensatory damages, attorney fees, and [sanctions designed to coerce] the offending creditor's compliance[.]" *In re Mooney*, 532 B.R. 313, 327 (Bankr. D. Idaho 2015) (citing *Walls v. Wells Fargo Bank*, 276 F.3d 502, 507 (9th Cir. 2002)). Damages for out-of-pocket medical expenses caused by the discharge violation are available where a debtor proffers adequate proof of such damages. *See Dickerson*, 510 B.R. at 304–05. However, "[t]his Court has held that, as a matter of law, a debtor cannot recover damages for emotional distress from a violation of the discharge injunction." *In re Urwin,* No. 07-01104, 2010 WL 148645 at *8 (Bankr. D. Idaho Jan. 14, 2010) (citing *Perry v. U.S. Bank Nat'l Ass'n (In re Perry)*, 03.2 I.B.C.R. 128, 131–32 (Bankr. D. Idaho 2003)).[4]

---

[4] Courts have held that emotional distress damages are not available because they are not necessary to remedy violations of § 524(a), and that no private right of action exists under § 524 per the 9th Circuit's

MEMORANDUM OF DECISION − 13

"Although 'relatively mild' non-compensatory fines may be necessary under some circumstances . . . § 105(a) simply does not allow for . . . serious punitive penalties[.]" *Dyer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1193 (9th Cir. 2003) (quoting *Zambrano v. Tustin*, 885 F.2d 1473, 1479 (9th Cir. 1989)). "A flat unconditional fine even as little as $50" is considered a criminal contempt sanction, and is not allowed 'if the contemnor has no subsequent opportunity to reduce or avoid the fine through compliance,' and the fine is not compensatory." *Id.* at 1192 (quoting *F.J. Hanshaw Enters. Inc. v. Emerald River Dev. Inc.*, 244 F.3d 1128, 1137–38 (9th Cir. 2001)).

Here, Debtor has failed to produce adequate evidence of entitlement to compensatory damages. First, Debtor is not entitled to attorney's fees because he is representing himself in this matter and has not incurred any attorney's fees. Second, Debtor has not offered any evidence of out-of-pocket costs related to his remediation of the discharge violation through these motions.

Third, Debtor has failed to establish the existence of other damages, such as out-of-pocket medical costs or lost wages. As discussed above, Debtor offered Exhibit 3 for admission into evidence, but the "client ledger" included in that submission, even if admissible, fails to show that the Debtor was directly billed for, or paid, any out-of-pocket medical costs. Further, Debtor's pleadings suggest that he has not incurred any

---

decision in *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 510 (9th Cir. 2002). *In re Urwin,* No. 07-01104, 2010 WL 148645 at *8 (Bankr. D. Idaho Jan. 14, 2010) (citing *Perry v. U.S. Bank Nat'l Ass'n (In re Perry)*, 03.2 I.B.C.R. 128, 131–32 (Bankr. D. Idaho 2003)).

MEMORANDUM OF DECISION − 14

out-of-pocket costs, and that bills from Lifeworks Northwest are paid by Health Share Oregon, an organization that serves Oregon Health Plan (Medicaid) recipients in the State of Oregon. Dkt. No. 71 at 4. Even if the Court found Exhibit 3 to be admissible in this proceeding, its contents are insufficient to establish that Debtor has incurred any actual damages in the form of out-of-pocket medical expenses.

Fourth, as a matter of law, damages for emotional distress based on the discharge violation are not available to the Debtor here. Moreover, even if emotional distress damages were available, Debtor did not adduce evidence demonstrating he should be awarded damages for emotional distress. Debtor "asserts that emotional distress did indeed result from the creditor's efforts" and that "Exhibit 3 plainly shows a diagnosis of Post-Traumatic Stress Disorder and Depression brought about by debtor's treatment at the hands of the creditor." Dkt. No 71 at 4. In support of this assertion, Debtor offers Exhibit 3, which contains letters from two employees of Lifeworks Northwest. The letters discuss medical conditions Debtor has been diagnosed with, but do not address what caused these conditions and make no mention of how the State's Letter might relate to such diagnoses. Dkt. No. 72 at 2.

Overall, Debtor has failed to meet his burden of demonstrating entitlement to compensatory damages based on the State's discharge violation. Even hypothetically presuming the admissibility of Exhibit 3, Debtor has not produced adequate evidence of attorney's fees, out-of-pocket costs related to his motions, out-of-pocket medical

MEMORANDUM OF DECISION − 15

expenses, or any other basis for awarding damages. Accordingly, the Court hereby declines to award Debtor compensatory damages.

     5. *Debtor is Not Entitled to Damages Under the FDCPA*

Debtor seeks an award of damages under the FDCPA, an issue he raises for the first time in his motion for judgment on the pleadings. Dkt. No. 71. The State responded, arguing that the FDCPA is not applicable in this case because Debtor's debt is not covered by the FDCPA, and because the State is not a debt collector under the meaning of the statute. Dkt. No. 73.

Congress enacted the FDCPA to "eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692. The FDCPA authorizes civil damages against any debt collector based on "actual damages" for violations of the FDCPA and up to $1,000 in additional damages "as the court may allow." 15 U.S.C. § 1692k(a)(1)–(a)(2)(A). The statute also authorizes other damages "in the case of a class action." 15 U.S.C. § 1692k(a)(2)(b).

The FDCPA defines a "debt collector" as a person who "regularly collects or attempts to collect . . . debts owed or due . . . another." 15 U.S.C. § 1692a(6)(C). The Supreme Court recently explained that the plain language of the FDCPA indicates that "third party debt collection agents generally qualify as 'debt collectors' under the relevant statutory language, while those who seek only to collect for themselves . . . do not." *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1721 (2017). "This is because debt collection agents seek to collect debts 'owed another.'" *Id.*

MEMORANDUM OF DECISION − 16

The FDCPA defines a "debt" as "any obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5). While the FDCPA does not define "transaction," "the judicial consensus interpretation is reflected in the Seventh Circuit's ruling that the statute is limited in its reach 'to those obligations to pay arising from consensual transactions, where parties negotiate or contract for consumer-related goods or services.'" *Bartlett v. Blaser, Sorensen & Oleson, Chtd.*, 27 F.Supp.3d 1092, 1102 (D. Idaho 2014) (quoting *Turner v. Cook*, 362 F.3d 1219, 1227 (9th Cir. 2004)). Obligations to pay damages resulting from state court action do not arise out of a consensual transaction involving consumer goods or services. *Id.*

Debtor argues he should be awarded damages under the FDCPA as an individual because of the State's effort to collect the debt by way of sending the Letter. Dkt. No. 71. He also asks this Court to "extend[] this case in the form of a class action to all those against whom [the State] has chosen to pursue post-bankruptcy collection efforts against . . . ." *Id.* at 5. In response, the State claims that Debtor's debt is not covered by the FDCPA because, among other reasons, the debt did not arise out of a consumer transaction. Dkt. No. 73 at 2–3.

Debtor's claims for damages under the FDCPA must fail because Debtor's restitution obligation to the State is not a "debt" under the meaning of the statute.

MEMORANDUM OF DECISION − 17

Debtor's restitution obligation is not a debt because it did not arise out of a consumer transaction. Rather, it arose out of Debtor's misconduct as adjudicated by the courts of the State of Oregon. The debt bears no relation to consumer goods and is not covered by the FDCPA. Furthermore, the State is not a debt collector as defined by the FDCPA because it is not collecting debts owed to another party. The collection of Debtor's debt by the State is not covered by the FDCPA, and Debtor may not be awarded damages under the FDCPA for himself or on behalf of any putative class. Thus, the invitation to extend this case in the form of a class action is denied.

  6. *The State Shall Not Be Fined Under the Court's Contempt Powers*

  Under limited circumstances, this Court may impose "relatively mild" fines to the extent necessary to encourage compliance with the Bankruptcy Code. The State violated the discharge injunction, and is potentially subject to civil contempt sanctions, because it sent the Letter to Debtor. However here, as in *Dyer*, a monetary fine is not appropriate because the fine would be non-compensatory and the State would not be able to reduce or avoid the fine through compliance. Such a fine would constitute a criminal contempt sanction and is not proper in these proceedings. The State's sanctionable conduct began and ended when the Letter was sent, and imposition of a fine will not encourage compliance with the Bankruptcy Code's provisions in the present.

  7. *The Debtor's Motion for Injunctive Relief is Denied*

  Debtor moved for injunctive relief, seeking to enjoin the State from further collection efforts of the restitution debt of $2,757.12. Dkt. No. 59. The Chapter 7 trustee

MEMORANDUM OF DECISION − 18

paid the full amount of the State's debt out of the proceeds of Debtor's bankruptcy estate on May 14, 2018. Dkt. No. 70 at 7. This payment satisfied the debt in full, and there is no reason to believe that the State will try to collect on this debt again in the future. As such, there is no reason for this Court to issue an order for injunctive relief and Debtor's motion for such relief is denied.

## *Conclusion*

The State violated the discharge injunction when it sent Debtor the Letter. The State's conduct is sanctionable, but Debtor failed to prove entitlement to damages. Accordingly, Debtor's motion for sanctions, Dkt. No. 58, is hereby denied. Since the debt at issue here has already been collected in full, there is no reason for the Court to enjoin the State from future collection efforts on the debt. Therefore, Debtor's motion for injunctive relief, Dkt. No. 59, is denied. Debtor's motion for judgment on the pleadings, Dkt. No. 71, is construed as an effort to respond to the Court's request to submit information on damages for the discharge violation. Its contents did not establish Debtor's right to damages, and Debtor's motion for judgment on the pleadings is denied. A separate order will be entered.



DATED: August 10, 2018

_____
JOSEPH M. MEIER
U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION − 19